# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

JOHN COLEMAN,               )
                            )

            Petitioner,       )
                            )

      v.                   )         No. 1:18-CV-160 RLW
                            )

EILEEN RAMEY[1]  ,      )
                            )

            Respondent.    )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Petitioner John Coleman's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (ECF No. 1.) For the following reasons, the Court will deny the Petition.

### Procedural History

Petitioner is currently incarcerated at the Jefferson City Correctional Center in the Missouri Department of Corrections pursuant to a judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. On June 26, 2013, a jury found Petitioner guilty of one count of first-degree robbery. On August 30, 2013, the trial court sentenced Petitioner as a persistent offender under Missouri Revised Statutes § 558.016 (Cum. Supp. 2010), to thirty years' imprisonment.

Petitioner appealed his conviction to the Missouri Court of Appeals and raised three claims of trial court error. The Missouri Court of Appeals affirmed. <u>State v. Coleman</u>, 458 S.W.3d 452 (Mo. Ct. App. 2015) (per curiam) (unpublished memorandum) (Resp. Ex. E, ECF No. 14-5).

---

[1] Eileen Ramey is now the Warden of Jefferson City Correctional Center, where Petitioner is housed. Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, Eileen Ramey's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

Petitioner timely filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15 (ECF No. 14-7 at 6-11).  Petitioner's post-conviction counsel timely filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing (ECF No. 14-7 at 17-32), that raised two claims of ineffective assistance of trial counsel: (1) failure to investigate and call a potential alibi witness, Mr. James Gordon; and (2) promising Defendant's testimony during voir dire.  The motion court held an evidentiary hearing on February 19, 2016, and denied the postconviction motion on February 29, 2016 (ECF No. 14-7 at 36-43).  The Missouri Court of Appeals affirmed the motion court's denial of postconviction relief on June 12, 2018.  Coleman v. State, No. ED105663 (Mo. Ct. App. 2018) (per curiam) (unpublished memorandum) (Resp. Ex. K, ECF No. 14-11).

## Pleading Standard

Respondent first argues that the Petition should be dismissed because Petitioner failed to properly plead pursuant to 28 U.S.C. § 2254 Rule 2(c).  Respondent states that Petitioner alleges only two summary two grounds for relief, the first being "Direct Appeal," and the second "Missouri Court of Appeals Eastern District."  (ECF No. 14 at 5, citing ECF No. 1 at 5, 6.)

The Eighth Circuit has held "that in order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review."  Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990).  The Eighth Circuit has also held, however, that "a petition filed by a pro se petitioner should be 'interpreted liberally and

. . . should be construed to encompass any allegation stating federal relief.'" Harris v. Wallace,

No. 18-3717, 2021 WL 27786 at *3, __ F.3d __ (8th Cir. Jan. 5, 2021) (quoted case omitted).

It is insufficient for a habeas petitioner to simply point to the state court record. See Adams,

897 F.2d at 333 (a "general reference to the transcripts, case records and briefs on appeal patently

fails to comply with Rule 2(c)."); see also Wilson v. Larkins, 2009 WL 2069696, at *2 n.3 (E.D.

Mo. July 10, 2009) (finding § 2254 petition failed to comply with the specificity requirement of

Rule 2(c) where it stated petitioner sought habeas relief on the grounds he raised in his direct

appeal brief and in post-conviction proceedings).  In the interests of justice, the Court will liberally

construe the Petition and attempt to discern the grounds for relief Petitioner seeks to raise.

### Grounds Raised

On June 28, 2018, Petitioner filed the instant Petition for habeas relief in federal court.

(ECF No. 1.)[2]  Respondent filed a response in opposition with supporting exhibits on August 28,

2018.  (ECF No. 14).  Petitioner filed a Reply to Show Cause Order in support of his Petition on

September 6, 2018 (ECF No. 15).  Respondent interprets Petitioner's Grounds One and Two, titled

"Direct Appeal," and "Missouri Court of Appeals Eastern District," as attempts "to raise the claims

he raised in his direct appeal and his post-conviction appeal" (ECF No. 14 at 5) and its Response

addresses those claims.

It is unclear whether Petitioner intended the two grounds labeled "Direct Appeal," and

"Missouri Court of Appeals Eastern District" to raise on federal habeas the claims Petitioner

---

[2]Attached to the Petition are a number of exhibits and the following supplements: a three-page document titled "Further Ineffectiveness and Proof of my innocent" [sic] (ECF 1-1 at 10-12), that does not assert additional grounds for habeas relief but instead consists of factual allegations; a one-page document titled "Further Evidence in my behalf" (id. at 14) that consists of factual allegations; a one-page document titled "Afterthoughts" (id. at 23) that primarily consists of factual allegations but the first paragraph of which appears to supplement Petitioner's Ground Six as discussed *infra*; and a one-page document titled "Miscarriage of Justice" (id. at 24) that discusses legal principles concerning plain error review.

asserted on direct appeal and post-conviction appeal.  Respondent fails to mention several factual allegations Petitioner includes in the "supporting facts" paragraph of the form § 2254 complaint that follows Ground One "Direct Appeal," only one of which was raised on direct appeal.  In this paragraph, Petitioner wrote:

> My fast speedy trial was violated.  I filed 3-times on this documents included on this issue.  My trial lawyer let an [sic] juror be on the panel after I done told him I had an altercation with him in front of TGI Friday 2010, downtown, failed to get documents, files, records from the St. Patrick Center, mental conditions.

(ECF No. 1 at 5.)   The Court interprets these statements, read together with the Petition's descriptions of claims raised on direct appeal and post-conviction review, as raising the following grounds for federal habeas relief:[3]

> (1) The trial court erred in denying Petitioner's motion to suppress identification and overruling the defense's objections to two witnesses' identification of Petitioner as the man who robbed the bank in a photographic and physical lineup; this violated Petitioner's due process rights because the lineups were impermissibly suggestive and tainted the witnesses' pretrial and in-court identifications;
>
> (2) The trial court erred in denying Petitioner's motion to dismiss the indictment based on violation of his Sixth Amendment speedy trial rights;
>
> (3) The trial court erred and violated Petitioner's due process rights by allowing the admission of evidence of prior bad acts, specifically that Petitioner was on probation or parole and confined in the St. Louis County Justice Center during the robbery investigation;
>
> (4) Trial counsel was ineffective for failing to strike a biased juror from the panel; and
>
> (5) Trial counsel was ineffective for failing to call a witness and obtain documents, files, and records (sign-in sheets) from the St. Patrick Center to support Petitioner's alibi defense.

---

[3]It is unclear whether Eighth Circuit precedent requires a district court to liberally construe a pro se habeas petition to this extent, but the Court does so here in the interests of justice and out of an abundance of caution.  That said, when a petition is as cursory and vague as the present one, a court runs the risk of deciding a ground that was not raised.  See, e.g., Bracken v. Dormire, 247 F.3d 699, 702–03 (8th Cir. 2001).

The Court finds the Petition does not assert sufficient specific facts to raise a ground for habeas relief based on Petitioner's mental condition.[4]

In Ground Two "Missouri Court of Appeals Eastern District," Petitioner wrote in the accompanying "supporting facts" paragraph:

> All of the facts I been mentioning in all of my claims. I am a petty thief! There's nothing violent on my record. Just all stealing. I'm not a prior offender. This is the only alleged robbery I ever had. So how could I get 30 years?? That is not right. I am an [sic] persistent offender on those stealing cases. There's no way I

---

[4]In addition to the phrase "mental conditions" included in the "supporting facts" paragraph of Ground One "Direct Appeal" quoted above, Petitioner states elsewhere in the Petition: "My mental health condition that I been to the state hospital 3 times, tried suicide 3-times, I was on my meds during all procedures. I am an [sic] schizophrenic, depression, anxiety, bi-polar disorder[.]" (ECF No. 1 at 3.) Under the "Timeliness of Petition" portion of the Petition, Petitioner states, "[M]y mental condition which they took advantage of. I'm 100% disable[d] an[d] schizophrenic, bi-polar, depression, anxiety, been to the state hospital 3-times, tried suicide 3 times. 3-doctors from Washington University told my then lawyer Oliver at the beginning of this case that I was unfit to stand trial. That I don't know what's going on. He got off my case when he was told that." (Id. at 13) Petitioner asserts in a supplement to his Petition titled "Further Ineffectiveness and proof of my innocent," that "I am 100% disable. [sic] I have mental issues, get monthly check for being schizophrenia [sic], depression, bi-polar, anxiety, bad heart, high blood pressure, been in mental institutions 3-times and etc. the courts known all of this and frame me!" (ECF No. 1-1 at 12.) Petitioner states in the "Further Evidence" supplement to his Petition, "[T]he court took advantage of my mentle [sic] capacity, even hid my medical records. During trial, before trial and even while picking my trial and at sentencing I was on my medication. I did not know whats [sic] was going on at any time. I was evaluated by 3-doctors from Washington University confirming I do not know what's going on and I was mentle [incompetent] to stand trial. Like I said my medical file came up missing." (ECF No. 1-1 at 13, ¶¶ 1-5.) While Petitioner arguably may contend in his Petition that he was mentally incompetent to stand trial, the Court concludes the foregoing allegations do not state sufficient facts to assert either a ground of ineffective assistance of trial counsel or trial court error on this basis. 28 U.S.C. § 2254, Rule 2(c).

On direct appeal, the Missouri Court of Appeals stated that Petitioner requested several trial continuances so he could obtain a mental examination (ECF No. 14-5 at 10), but the opinion did not mention the result of the exam. The state court docket sheet shows three trial continuances because the mental exam was incomplete, on January 25, 2012, February 24, 2012, and March 28, 2012. (ECF 14-2 at 7.) In an Amended Response to State's Request for Discovery filed July 27, 2012, presumably after the mental exam was complete, Petitioner's first attorney, public defender Chad M. Oliver, represented that "Defendant does not intend to rely on the defense of mental disease or defect at this time. If evidence is discovered supporting this defense, defendant will properly disclosure defense of mental disease or defect." (ECF No. 14-2 at 34.)

Petitioner did not raise any claim on direct appeal or post-conviction motion as to either ineffective assistance of trial counsel or trial court error concerning his mental condition or competence to stand trial. As a result, even if Petitioner's allegations on federal habeas were sufficient to raise a claim of ineffective assistance of counsel or trial court error on this ground, it would be procedurally barred and Petitioner does not allege cause for the default and actual prejudice as a result of an alleged violation of federal law, or demonstrate that a fundamental miscarriage of justice would occur if the Court were not to address the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

should have gotten 30 years!  There are guys with worse and several cases than me and gotten less time.

(ECF No. 1 at 6-7.)

This statement does not allege sufficient specific facts to raise a ground for federal habeas relief.  In the supplement to the Petition titled "Afterthoughts," however, Petitioner states that his 30-year sentence is "grossly disproportionate to the crime" and that he is "contending that the sentence violated a constitutional ban on cruel and unusual punishment."  (ECF No. 1-1 at 23.) Liberally interpreted, the Court finds Ground Two raises the following ground for federal habeas relief:

(6) Petitioner's 30-year sentence for robbery as a persistent offender constitutes cruel and unusual punishment in violation of the Eighth Amendment.[5]

Because the Court determines that Petitioner's claims do not warrant habeas relief on their face, it will deny the Petition without an evidentiary hearing.[6]

## Factual Background

The post-conviction motion court described the facts of Petitioner's criminal case and post-conviction claims as follows:

The evidence at movant's trial was that on February 1, 2011, before noon, [a] man came into a bank on Olive in the City of St. Louis with his face partially covered by a hood.  The man approached a teller's window and threw a bag on the counter.  There was a note on the bag stating it was a robbery and the teller had two seconds to comply.  The teller grabbed bills (at least one thousand dollars) and stuffed them into the bag.  The man then took the bag and left.  An employee at an adjacent window pushed [a] "panic alarm."  The victim teller provided the police with a description of the robber, a photo display was created using a computer

---

[5]The sole claim Petitioner raised on post-conviction appeal is discussed as Ground Five.

[6]A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)).

program, and both bank employees who had seen the robber identified movant. Both employees also later identified movant in a physical lineup.

Movant was represented at his trial by Paul Yarns.  Mr. Yarns testified at the hearing that he took the case over from the Public Defender's Office several months prior to the trial.  Mr. Yarns said the public defenders had done a "pretty substantial" investigation, and he relied on their work.

Mr. Yarns discussed possible defense with movant, including an alibi and a reasonable doubt defense.  Movant's possible alibi was that he had been at the St. Patrick's Center at the time of the robbery, which was a short distance from the bank.  An investigator for the Public Defender's Office had gone to the St. Patrick's Center but there was nobody who could remember movant being at the Center at the time of the robbery.  It was decided that the defense strategy at trial would be to try to raise reasonable doubt.  Mr. Yarns thought the available evidence for an alibi defense was not strong enough because nobody at the St. Patrick's Center could substantiate that movant had been there at the time of the robbery, and he thought the State would be able to poke holes in the alibi.

Mr. Yarns said he reviewed the discovery and evidence with movant, and he discussed movant's right to testify.  Mr. Yarns advised against movant testifying because his priors would come into the case.  Mr. Yarns told the jury about movant's priors during voir dire because at the beginning of the trial it was anticipated that movant would be testifying.  Movant had made clear that he was going to testify and Mr. Yarns wanted to make sure the members of the jury would understand they could only use movant's prior[s] in assessing movant's credibility as a witness.  Coleman eventually decided he was not going to testify at the trial.

Judson Bliss, the Program Director at the St. Patrick's Center testified at the evidentiary hearing.  Mr. Bliss identified movant's Exhibit A which consists of several records, including sign-in sheets from the Center.  Mr. Bliss said the sign-in-sheet for the Shamrock Club (the Center) showed a John Coleman signed in on February 1, 2011 but the sign-in sheet did not have a time on it.  Mr. Bliss said no identification is required at the time a person signs in.  The intake form for movant lists the last four digits of movant's social security number as 5089.  It appeared to Mr. Bliss, and it appears to the Court, that the number on the sign-in sheet for February 1, 2011 is "5689" while the number of the sign-in sheet for February 2, 2011 is "5089."  It is not readily apparent whether the signatures for both days were by the same person or a different person; the signatures on February 1st do not contain all of the letters of movant's last name while the signatures on February 2nd do contain all of the letters.  Mr. Bliss had no personal knowledge that the February 1st signature was movant's.

Movant testified at the evidentiary hearing that he had "thirty something" prior felony convictions but "nothing violent."  He said he told Chad Oliver, a public defender representing him prior to Mr. Yarns, that he had been eating lunch

at the Center at 11:45 a.m., the time of the robbery.  He said he told both Mr. Oliver and Mr. Yarns that if they went to the Center he'd be remembered.  He asked them to interview his counselor, his case worker and his meditation instructor.  Movant said he always wanted to testify, including at the time of jury selection but he later changed his mind because Mr. Yarns advised against it based on his criminal history.  When shown the sign-in sheet for February 1, 2011, movant said the signature was his and the number on the form was 5089.

After the State rested Mr. Yarns asked for a brief recess so that he could consult with movant.  After the recess Mr. Yarns advised the Court that movant had decided not to testify.  The Court then questioned movant regarding his decision and movant's responses indicate he changed his mind after voir dire, he had discussed the issue sufficiently with his attorney, he understood he had the right to testify, and he made his decision without any coercion.

(Resp. Ex. G, ECF No. 14-7 at 39-41.)

### Standard of Review

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  See also Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in state court in accordance with state procedural rules.  Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted).  To preserve issues for federal habeas review, a state prisoner must fairly present his claims to state courts during direct appeal or in post-conviction proceedings.  Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim.  Id. at 1150 (cited case omitted).  A state prisoner who "fails to follow applicable state procedural rules for raising the claims is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies."  Id. at 1151 (cleaned up) (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).  "[A] prisoner must 'fairly present' not only the facts, but also the

substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim raised in state court that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

If the petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the state court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); see Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme

Court's conclusion on a set of materially indistinguishable facts.  Williams, 529 U.S. at 412-13;
Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A State court's decision is an "unreasonable
application" of Supreme Court precedent if it "identifies the correct governing legal principle from
[the Supreme Court's] decisions but unreasonably applies that principle to the facts of the
prisoner's case."  Williams, 529 U.S. at 413.  Merely erroneous or incorrect application of clearly
established federal law does not suffice to support a grant of habeas relief.  Instead, the state court's
application of the law must be objectively unreasonable.  Id. at 409-11; Jackson v. Norris, 651
F.3d 923, 925 (8th Cir. 2011).  Finally, when reviewing whether a state court decision involves an
"unreasonable determination of the facts" in light of the evidence presented in the state court
proceedings, state court findings of basic, primary, or historical facts are presumed correct unless
the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1);
Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007).
Erroneous findings of fact do not automatically require the grant of habeas relief, however.
Instead, the determination of these facts must be unreasonable in light of the evidence of record.
Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA [Antiterrorism and Effective Death Penalty
Act] to exercise only limited and deferential review of underlying State court decisions."  Lomholt
v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  "To obtain habeas relief from a federal court, a state
prisoner must show that the challenged state-court ruling rested on 'an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement.'"  Metrish v.
Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).
This standard is "difficult to meet."  Id.

**Procedurally Defaulted Claims**

A.  Ground Two – Trial Court Error – Sixth Amendment Speedy Trial Violation

In Ground Two of the Petition, Petitioner claims the trial court erred in denying Petitioner's motion to dismiss the indictment based on violation of his Sixth Amendment right to a speedy trial.  Although Petitioner raised this claim on direct appeal, the Missouri Court of Appeals found he did not raise the claim in his motion for new trial and therefore did not preserve the claim of error.  (Resp. Ex. E, ECF No. 14-5 at 7.)  A claim must be presented at each step of the judicial process in state court in order to avoid procedural default.  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994).  The Missouri Court of Appeals reviewed the unpreserved claim for plain error and found none, after analyzing the Barker v. Wingo factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  407 U.S. 514, 529 (1972).  (ECF No. 14-5 at 7-15.)

A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." Clark v. Bertsch, 780 F.3d 873, 874 (8th Cir. 2015).  Instead, this Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim.  Coleman, 501 U.S. at 750.

Ineffective assistance of counsel can, in some instances, constitute cause for excusing a procedural default, but at the very least it must be ineffectiveness that rises to the level of a Sixth Amendment violation.  See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  Even then, there must be an accompanying ineffective assistance of counsel claim for failure to raise the procedurally defaulted claim.  See id. at 452 ("[A] claim of ineffective assistance, we said,

generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 489 (1986)) (internal citations omitted).  Here, Petitioner did not raise an accompanying ineffective assistance of counsel claim for failure to present the procedurally defaulted claim.  As a result, Petitioner fails to demonstrate cause for his procedural default.

If a prisoner fails to demonstrate cause, the court need not address prejudice.  <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007).  Nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim.  Petitioner has presented no new evidence of actual innocence; nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006); <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-53 (8th Cir. 1997).

Consequently, the claim raised in Ground Two is procedurally barred from habeas review and will be denied.

B.  <u>Ground Three – Trial Court Error – Admission of Prior Bad Acts Evidence</u>

In Ground Three, Petitioner asserts the trial court erred in allowing evidence at trial of his prior bad acts, specifically that he was on probation or parole and confined to the St. Louis County Justice Center at the time of the robbery investigation.  Although Petitioner raised this claim on direct appeal, the Missouri Court of Appeals found it was not preserved for review because Petitioner did not object when the State introduced the evidence at trial and he did not raise the claim in his motion for new trial.  (ECF No. 14-5 at 15.)  A claim must be presented at each step of the judicial process in state court in order to avoid procedural default.  <u>Jolly</u>, 28 F.3d at 53.  The Missouri Court of Appeals reviewed the unpreserved claim for plain error and found none, stating

the evidence was properly admitted because it was both logically and legally relevant. (ECF No. 14-5 at 15-17.)

A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." Clark, 780 F.3d at 874. Instead, this Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim. Coleman, 501 U.S. at 750.

Ineffective assistance of counsel can, in some instances, constitute cause for excusing a procedural default, but at the very least it must be ineffectiveness that rises to the level of a Sixth Amendment violation. See Edwards, 529 U.S. at 451-52. Even then, there must be an accompanying ineffective assistance of counsel claim for failure to raise the procedurally defaulted claim. See id. at 452 ("[A] claim of ineffective assistance, we said, generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citing Murray, 477 U.S. at 489 (internal citations omitted)). Here, Petitioner did not raise an accompanying ineffective assistance of counsel claim for failure to present the procedurally defaulted claim. As a result, Petitioner fails to demonstrate cause for his procedural default.

If a prisoner fails to demonstrate cause, the court need not address prejudice. Cagle, 474 F.3d at 1099. Nor has Petitioner shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Petitioner has presented no new evidence of actual innocence; nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Abdi, 450 F.3d at 338; Weeks, 119 F.3d at 1352-53.

Consequently, the claim raised in Ground Three is procedurally barred from habeas review and will be denied.

C.   Ground Four – Ineffective Assistance of Trial Counsel – Failure to Strike Biased Juror

In Ground Four, Petitioner alleges his trial counsel was ineffective for failing to strike a biased juror for cause after Petitioner told counsel he got into a fight with the juror in front of T.G.I. Friday's in downtown St. Louis in 2010.

Petitioner did not raise this claim at any stage of the state court proceedings, although he testified at the evidentiary hearing on his post-conviction motion that he "wanted to testify and I also wanted to testify to the fact at my trial it was a juror on my trial I got into a fight with in front of TGI Friday August of 2010."  (ECF No. 14-6 at 44, ll. 16-21.)  Petitioner did not raise a claim concerning his trial counsel's failure to strike the biased juror in either his pro se or amended Rule 29.15 motion.

Because Petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, it is procedurally defaulted and cannot be reviewed by this Court.  Coleman, 501 U.S. at 750.  This Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim.  Id.

Petitioner alleges no cause for his default or actual prejudice resulting from the alleged unconstitutional error.  Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim.  Petitioner has not presented any new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Abdi, 450 F.3d at 338.

Consequently, the claim raised in Ground Four is procedurally barred from habeas review and will be denied.

D. Ground Five – Ineffective Assistance of Trial Counsel – Failure to Call Witness and Obtain Documents, Files, Records

In Ground Five, Petitioner asserts his trial counsel was ineffective for failing to call a witness and obtain documents, files, and records (sign-in sheets) from the St. Patrick Center to support his alibi defense.

Respondent asserts that the Missouri Court of Appeals denied this claim on post-conviction appeal on the merits  (ECF No. 14 at 26-27), but this is contradicted by the record.  The Missouri Court of Appeals found that the claim Petitioner raised on appeal was broader than the claim included in his post-conviction motion, and discussed this claim as follows:

> We note, first, that Movant's point is unpreserved.  "In actions under Rule 29.15, 'any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal.'"  McLaughlin v. State, 378 S.W.3d 328, 340 (Mo. banc 2012) (quoting Johnson v. State, 333 S.W.3d 459, 471 (Mo. banc 2011)).  "[D]efects in post-conviction relief pleadings 'cannot be remedied by the presentation of evidence and refinement of a claim on appeal.'"  Tisius v. State, 519 S.W.3d 413, 425 (Mo. banc 2017) (quoting Mallow v. State, 439 S.W.3d 764, 769 (Mo. banc 2014)).  "Furthermore, there is no plain error review in appeals from post-conviction judgments for claims that were not presented in the post-conviction motion."  McLaughlin, 378 S.W.3d at 340 (citing Hoskins v. State, 329 S.W.3d 695, 696-97 (Mo. banc 2010)).

> In Movant's Amended Motion, he alleged only that his Counsel "was ineffective for failing to investigate and call potential defense witness, [ ] Gordon."  Specifically, Movant claimed that Gordon would testify at the evidentiary hearing that, had Counsel "called him to testify at trial, he would have testified that at approximately 11:45 a.m. on February 1, 2011 (i.e. at the time of [the] alleged robbery), Movant … was at the St. Patrick Center" and that he "would have been able to present records from the St. Patrick Center demonstrating" as much.

> Movant's claim on appeal, however, is broader.  He asserts that Counsel was ineffective because he "never conducted *any* investigation of his own into the alibi defense or attempted to contact *anyone* who may have been able to place [Movant] at the St. Patrick Center at the time of the bank robbery occurred before he abandoned [Movant]'s alibi defense." (emphasis added).  Movant makes no

mention of Gordon, who did not testify, in his brief, and in now broadening the scope of his claim of error, "Movant's argument on appeal differs from his amended motion."  Hill v. State, 532 S.W.3d 744, 750 (Mo. App. E.D. 2017).  Because Movant's argument that Counsel failed to personally conduct any investigation or to contact anyone from the St. Patrick Center was not raised in his Amended Motion and is raised for the first time on appeal, it is not preserved, and it is unreviewable.  See, e.g., McLaughlin, 378 S.W.3d at 340; and Tisius, 519 S.W.3d at 425.

(ECF No. 14-11 at 5-6.)  Thus, the court specifically and clearly found the claim was procedurally barred by Petitioner's failure to comply with the procedural requirement of presenting the specific claim raised on appeal in his Missouri Rule 29.15 motion for post-conviction relief.  As a result, this Court cannot consider Petitioner's claim in Ground Five because it is procedurally barred and must be denied.  See Coleman, 501 U.S. at 750.

Despite finding the claim unpreserved, the Missouri Court of Appeals proceeded to address its merits and denied it for the following reasons:

> Furthermore, even if Movant's claim on appeal were reviewable, it would still fail.  To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must satisfy the two-prong Strickland test and show: "(1) that counsel's performance was deficient, in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that counsel's deficient performance prejudiced Appellant's defense."  Robinson v. State, 497 S.W.3d 298, 301 (Mo. App. E.D. 2016) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); Deck v. State, 68 S.W.3d 418, 425 (Mo. banc 2002)).  To meet the performance prong, a movant must "overcome the presumptions that any challenged action was sound trial strategy, and counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  Id.  To prove prejudice, a movant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.

> "To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense."  Haidul v. State, 425 S.W.3d 148, 150 (Mo. App. E.D. 2014) (quoting Williams v. State, 168 S.W.3d 433, 441 (Mo. banc 2005)).  However, even if a movant can prove these elements, counsel's decision not to call a witness is presumptively a matter of trial strategy and ordinarily will not support a claim of ineffective assistance of counsel.  Robinson, 497 S.W.3d at 301.

Additionally, it is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy.  Id.

In denying the Amended Motion, the motion court found Movant's claim to be meritless because no witness testified to having any first-hand knowledge that Movant was at the St. Patrick Center at the time of the robbery, and the February 1, 2011 sign-in sheet could not establish that Movant was receiving services at the St. Patrick Center at the time of the robbery.  The motion court's findings and conclusions are not clearly erroneous.  First, Movant presented no witness who definitively testified that he was at the St. Patrick Center at the time of the robbery. While Bliss testified that Movant's name appeared to be on the sign-in sheet for the Center's "Shamrock Club" on the date of the robbery, February 1, Bliss qualified that the sheet contains neither a specific check-in time nor a specific check-out time. Additionally, Bliss agreed that since participants are not required to show identification to enter the program, he had no personal knowledge whether the name on the February 1 sheet was, in fact, Movant's signature.

Second, to the extent that Movant contends Counsel should have more thoroughly investigated an alibi defense, his argument is without merit.  At the hearing, Counsel testified that he met with the PD Office, which conducted a "substantial investigation," at least three times to discuss Movant's case and that he reviewed the available evidence.  Counsel testified that he relied on the PD Office's investigation and determined that its investigators could locate no one who remembered Movant being at the St. Patrick Center at the time of the robbery. Counsel, therefore, specifically explained that he opted not to pursue an alibi defense because "[t]here was no evidence indicating anybody could place [Movant] at the St. Patrick Center at the time of the incident ... [and it] seemed like a situation where it was way too easy to poke holes into."  Counsel thus testified that he determined an alibi defense was "not strong enough to proceed" under.  Given Counsel's reasonable explanation, Movant fails to overcome the presumption that Counsel proceeded pursuant to sound trial strategy.  See Manley v. State, 488 S.W.3d 145, 147 (Mo. App. E.D. 2016) (movant failed to overcome presumption that counsel's decision not to present alibi witnesses was sound trial strategy, "especially given trial counsel's reasonable explanation for his decision").

The motion court did not clearly err in denying Movant's Amended Motion. Point denied.

(ECF No. 14-11 at 5-9.)

The fact that the court considered the merits of this unpreserved claim as a "matter of grace" does not erase the fact of procedural default from Petitioner's failure to comply with state's procedural rule or the court's clear holding that it was defaulted.  Pollard v. Delo, 28 F.3d 887,

889 (8th Cir. 1994). Consequently, the claim raised in Ground Five is procedurally barred from habeas review and will be denied.

In the alternative, to the extent it can be determined that the post-conviction appeal court addressed the merits of the narrower issue of ineffective assistance of trial counsel raised in Petitioner's post-conviction motion before the motion court, the decision of the Missouri Court of Appeals was not unreasonable.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, the Court does not determine whether Petitioner's counsel provided effective assistance, but instead "whether the state court's application of the Strickland standard was unreasonable." See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101.

Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id. at 105.

The Missouri Court of Appeals correctly identified Strickland as the standard to apply. That court's application of the Strickland standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by it.  See Harrington, 562 U.S. at 101.

Consequently, this ground for relief must be denied.

E.  Eighth Amendment Challenge:  Cruel and Unusual Punishment

In Ground Six, Petitioner alleges the imposition of his 30-year sentence as a persistent offender is disproportionate to the crime and constitutes cruel and unusual punishment in violation of the Eighth Amendment because he has no violent history, no prior robbery convictions, and "nothing but stealing on his record."  (ECF No. 1-1 at 23.)

Petitioner did not raise this claim at any stage of the state court proceedings.  Because Petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, it is procedurally defaulted and cannot be reviewed by this Court.  Coleman, 501 U.S. at 750.  This Court may review the merits of the claim only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Petitioner shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim.  Id.

Petitioner alleges no cause for his default or actual prejudice resulting from the alleged unconstitutional error.  Nor has he shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim.  Petitioner has not presented any new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Abdi, 450 F.3d at 338.

Consequently, the claim raised in Ground Six is procedurally barred from habeas review and will be denied.

## Claim Addressed on the Merits

F.  Ground One – Trial Court Error – Denial of Motion to Suppress Identification

In Ground One, Petitioner asserts the trial court erred in denying his motion to suppress identification and overruling the defense's objections to two witnesses' identification of Petitioner in photographic and physical lineups as the man who robbed the bank.  Petitioner contends this violated his due process rights because the lineups were impermissibly suggestive and tainted the witnesses' pretrial and in-court identifications.

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.  The Missouri Court of Appeals discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

> In his first point, the defendant claims the trial court abused its discretion in denying his motion to suppress identification and in overruling his objections to the identification made by two witnesses, Justin Miller and Dointwanette McGruder, via a photographic lineup, a physical lineup, and in court.  The defendant contends that the photographic lineup was impermissibly suggestive because, in the set of six photographs viewed by Mr. Miller, the defendant had the most distinctive facial features, namely "the largest nose and the most noticeable facial pockmarks."  The defendant maintains that the physical lineup was impermissibly suggestive because the defendant appeared in the same position in both the photographic and physical lineups, he was the only person appearing in both lineups, and the pool of candidates for the physical lineup was small because of the defendant's age.  The defendant further contends that the lineup procedures were so unduly suggestive that they tainted the witnesses' in-court identifications.

> The defendant challenges the trial court's admission of evidence.  We review a trial court's decision to exclude or to admit evidence for an abuse of discretion.  State v. Washington, 444 S.W.3d 532, 536 (Mo. App. E.D. 2014).  A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.  Id.  Error in the admission of evidence justifies reversal only when the error was so prejudicial that it deprived the defendant of a fair trial.  Id.  The test for prejudice when a defendant claims

improper admission of evidence is whether the improper admission was outcome-determinative.  State v. Floyd, 347 S.W.3d 115, 122 (Mo. App. E.D. 2011).

Identification testimony is inadmissible when the pretrial identification procedure was unnecessarily suggestive, and the suggestive procedure rendered the identification unreliable.  Washington, 444 S.W.3d at 537.  The test contemplates a two-pronged inquiry to determine whether identification testimony is admissible.  Id.  First, we determine whether the procedures the police used were impermissibly suggestive.  Id.  "Police procedure is unduly suggestive if the witness's identification of the defendant results from the procedure or actions of the police, rather than from the witness's recollections of his or her firsthand observations."  Id. (quoting State v. Body, 366 S.W.3d 625, 629 (Mo. App. E.D. 2012)).

We proceed to the second prong of the inquiry only if we determine that the procedure was unnecessarily suggestive, id., which involves measuring the impact the suggestive procedure had upon the reliability of the identification made by the witness, State v. Moorehead, 438 S.W.3d 515, 520 (Mo. App. E.D. 2014).  While reliability is the key in determining the admissibility of identification testimony, a defendant must clear the suggestiveness hurdle before procuring a reliability review.  Id.  In the second prong of the analysis, we examine several factors to determine whether the suggestive procedure made the identification testimony unreliable.  Washington, 444 S.W.3d at 537.  In evaluating reliability, we consider (1) the opportunity for a witness to view the subject; (2) the degree of attention by the witness; (3) the witness's accuracy in any prior descriptions given; (4) the witness's level of certainty demonstrated while making the identification; and (5) the interval between the event and the identification procedure.  Id. at 537-38.  We reiterate that the defendant must establish that the police procedures were impermissibly suggestive before review of the identification's reliability becomes necessary or appropriate.  Floyd, 347 S.W.3d at 125.  If the procedure is not unduly suggestive, the out-of-court and in-court identifications are admissible.  Moorehead, 438 S.W.3d at 520.

The defendant argues that he stood out in both lineups.  He asserts that he stood out in the photographic lineup because of his distinctive facial features that were unique to him—"the largest nose of any one [sic] in the group," "the worst pockmarks," and a "protruding" lower lip and jaw.

Detective Spreck assembled the photographic lineup.  Having met with the defendant who offered Detective Spreck detailed information about the robbery in exchange for assistance with a problem with his probation or parole officer, Detective Spreck explained that he used a computer program to enter physical characteristics that he wanted all of those persons appearing in the lineup to have, such as black, male, certain skin tone, and approximate age.  The computer program gave Officer Spreck a set of approximately thirty photographs, and he selected five who resembled the defendant to include in the lineup.  The computer then randomly positioned the photographs in the lineup.  Two individuals besides the defendant

had pockmarks on their face, and some of the others had large noses.  When Mr. Miller viewed the photographic lineup, the detective told him that the robber may or may not be pictured, no one directed him to a particular person, and nothing on the photo spread itself directed him to a particular person.  Mr. Miller identified the defendant as the robber, and stated that he had no doubt in his mind.  Ms. McGruder separately viewed the same photographic lineup and immediately identified the defendant.  No one told Ms. McGruder whom to choose from the photographic lineup, she did not feel any pressure to identify someone, nor did she feel rushed.

Dissimilarity in physical appearance alone does not establish impermissible suggestion.  Floyd, 347 S.W.3d at 125.  Only identical twins can be identical in a lineup, and so long as no one individual clearly stands out, the law does not require exact conformity to ensure an untainted identification procedure.  Id.  Police are only required to find physically similar participants, even if a defendant has a physical abnormality or very distinctive appearance, because no lineup in that situation can be expected to provide subjects reasonably close in appearance.  Id. at 125-26.  Differences in age, height, weight, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness. Washington, 444 S.W.3d at 539.

The defendant further argues that he stood out in the physical lineup, rendering it unduly suggestive, because the pool of participants for the lineup was small because of the defendant's age, he was the only person in both lineups, and he was in the same position in both lineups.  Detective Torrence conducted the physical lineup.  Corrections officers at the St. Louis County Justice Center, where the defendant was then confined, assembled the lineup from the pool of persons confined at that time, of a similar age to the defendant, and who were willing to appear in the lineup.  Corrections officers chose the position in the lineup for each person.  Detective Torrence testified that generally with a physical lineup, police try to find individuals with similar characteristics, such as height, weight, build, age, and complexion, and that the other persons in  the lineup were similar in appearance to the defendant.  Detective Torrence told both witnesses that the robber may or may not appear in the lineup.  Mr. Miller identified the defendant in a physical lineup.  Mr. Miller testified that no one suggested whom he should choose from the lineup.  Again, Mr. Miller identified the defendant.  Ms. McGruder also identified the defendant in the physical lineup.  She stated that no one suggested whom she should identify, she felt no pressure to identify anyone, and she did not feel rushed.

First, that the pool of those available for the physical lineup was smaller than usual because of the defendant's age does not mean that the other persons did not resemble the defendant.  And even if there were some dissimilarity in physical appearance, that alone does not establish impermissible suggestion.  Floyd, 347 S.W.3d at 125.  We reiterate that police are only required to find physically similar participants, even if a defendant has a physical abnormality or distinctive

22

appearance, because no lineup in that situation could be expected to provide subjects reasonably close in appearance.  Id. at 125-26.

Second, a police procedure is not impermissibly suggestive simply because the defendant was the only person to appear in both the photographic and physical lineups.  Washington, 444 S.W.3d at 539.  Furthermore, it was purely by chance that the defendant appeared in the first position in each lineup.  The computer randomly placed the defendant's photograph in the first position for the photographic lineup.  Corrections officers at the justice center placed the defendant in the first position in the physical lineup without knowing he had been in the same position in the photographic lineup.  We do not find that police procedures were unduly suggestive when the defendant by coincidence appeared in the first position in each lineup that different detectives conducted independently, especially when neither of the detectives chose the defendant's lineup position.

The trial court did not abuse its discretion in admitting the identification evidence because the police procedures were not impermissibly suggestive.  The record does not establish that the police took any action that made either the photographic lineup or the physical lineup unduly suggestive.  Thus, there is no need to question the reliability of the witnesses' out-of-court and in-court identifications.  Moorehead, 438 S.W.3d at 520.  We deny the defendant's first point.

(ECF No. 14-5 at 2-7) (footnotes omitted).

Upon review of the record, the Court concludes the Missouri Court of Appeals' determination that the trial court did not err in denying Petitioner's motion to suppress identification and overruling the defense's objections to the witnesses' identification of Petitioner was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379.  As such, it is entitled to deference.

Consequently, the Court will deny this ground for habeas relief.

## Conclusion

For the foregoing reasons, the Court concludes that the grounds in Petitioner John Coleman's Petition for Writ of Habeas Corpus are either procedurally barred or fail on the merits and must be denied in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner John Coleman's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Coleman has not made a substantial showing of a denial of a constitutional right or that it is debatable whether the Court's procedural rulings are correct, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.


**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this <u>20th</u> day of January, 2021.